NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3805-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RODNEY ROSARIO, a/k/a
RONNEY ROSARIO,

     Defendant-Appellant.

_____

Submitted November 18, 2025 – Decided February 11, 2026

Before Judges Sumners and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 16-11-0792.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Jeffrey L. Weinstein, Designated Counsel, on the briefs).

William A. Daniel, Union County Prosecutor, attorney for respondent (Meredith L. Balo, Assistant Prosecutor, of counsel and on the briefs).

Appellant filed a supplemental brief on appellant's behalf.

PER CURIAM

Following a jury trial, defendant Rodney Rosario was found guilty of first-degree murder, conspiracy to commit murder, first-degree felony murder, second-degree burglary, second-degree possession of a weapon for an unlawful purpose, second-degree unlawful possession of a weapon, two counts of third-degree criminal restraint, and two counts of fourth-degree aggravated assault. The offenses arose from the killing of Jose Luis Disla Cordero in a drug-related conspiracy involving co-defendants Miguel Angel Rosario Mejia, Mayrenid Hidalgo-Bautista, and Alejandro Lopez. Defendant was sentenced to an aggregate prison term of sixty-eight years.

Defendant appealed his conviction and sentence. We affirmed his conviction but remanded to the trial court to correct the judgment of conviction to reflect an aggregate prison term of sixty-four years.[1]

In February 2022, defendant filed a post-conviction relief (PCR) petition claiming ineffectiveness of trial counsel. On March 9, 2023, PCR Judge John

---

[1] We remanded defendant's conviction to vacate the sentences on the merged offenses (conspiracy, felony murder, possession of a weapon for an unlawful purpose, and aggravated assault with a firearm), amend two unlawful restraints counts to run concurrent with each other, and amend Rosario's conviction to reflect an aggregate term of sixty-four years.

M. Deitch entered an order and written decision denying the petition without an evidentiary hearing.

Defendant appeals, arguing:

POINT I

TRIAL COUNSEL'S REJECTION OF APPLICABLE LESSER[-]INCLUDED OFFENSES NEEDLESSLY DEPRIVED [DEFENDANT] OF THE OPPORTUNITY FOR A SIGNIFICANTLY LOWER SENTENCE.

POINT II

TRIAL COUNSEL'S FAILURE TO REQUEST CRITICAL INSTRUCTIONS FOR A FALSE IN ONE FALSE IN ALL CHARGE DEPRIVED [DEFENDANT] OF A FAIR TRIAL; IT WAS UNCONTROVERTED THAT THE STATE'S KEY WITNESS, ANGEL MEJIA, LIED IN HIS INITIAL STATEMENT AND SUCH ERROR IMPACTED THE OUTCOME BECAUSE THE STATE'S CASE HINGED UPON MEJIA'S CREDIBILITY AND THE LACK OF PROPER INSTRUCTION DEPRIVED THE JURY THE PROPER FRAMEWORK TO ASSESS THIS WITNESSES' CREDIBILITY. THE PCR COURT MADE A MISTAKEN FACTUAL FINDING IN REJECTING THIS CLAIM, NECESSITATING A REMAND.

POINT III

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO MEJIA'S TRIAL TESTIMONY THAT [DEFENDANT] WAS THE

3

"BOSS" OF A NARCOTICS TRAFFICKING
NETWORK THAT INCLUDED [DEFENDANT], CO-
DEFENDANTS AND THE VICTIM.

POINT IV

TRIAL COUNSEL WAS INEFFECTIVE FOR
FAILING TO PURSUE A DISMISSAL FOR THE
VIOLATION OF [DEFENDANT]'S RIGHT TO A
SPEEDY TRIAL; THE DELAY BETWEEN
INDICTMENT AND TRIAL OF OVER FOUR
YEARS WHILE [DEFENDANT] WAS
INCARCERATED WAS EXCESSIVE AS A
MATTER OF FUNDAMENTAL FAIRNESS.

POINT V

THE PCR COURT WRONGLY DETERMINED
THAT [DEFENDANT]'S CLAIM OF DISPARATE
SENTENCING WAS PROCEDURALLY BARRED,
SINCE A DISPARATE SENTENCING CLAIM
QUALIFIES AS A SENTENCE NOT AUTHORIZED
BY LAW AND IS THUS COGNIZABLE PURSUANT
TO [RULE 3:22-2(c)].

In defendant's self-represented supplemental brief,[2] he argues:

DEFENDANT'S EXTENDED TERM SENTENCE OF
64 YEARS WITH AN 85% PAROLE DISQUALIFIER
IS AN ILLEGAL SENTENCE, IN LIGHT THAT NO
PRIOR CONVICTIONS EXIST. THE FIFTH AND
SIXTH AMENDMENT OF THE UNITED STATES
CONSTITUTION, ARTICLE I, PAR. 6 OF THE NEW
JERSEY CONSTITUTION, AND ERLINGER V.
UNITED STATES, 602 U.S. 821 (June 21 2024),
REQUIRE THE JURY-NOT A SENTENCING JUDGE

---

[2] We set forth defendant's argument verbatim.

4

TO DETERMINE THE FACTS AND THE LAW, AND WHETHER PRIOR CONVICTIONS USED TO ESTABLISH THE BASIS FOR ENHANCED SENTENCING. ALLSENTENCES MUST BE VACATED (Partially raised below).

After reviewing the parties' arguments, the record, and the governing legal principles, we affirm.

## I.

We recount the relevant facts and procedural rulings culminating in defendant's conviction and sentence.

Defendant, Mejia, Lopez, and Hidalgo-Bautista sold drugs together. Believing that Cordero had stolen money, drugs, a gun, and jewelry from them, they planned to kill Cordero and recover the stolen items. On the day of the offense, defendant, Mejia, and Lopez drove Hidalgo-Bautista's car to a bar down the street from Cordero's apartment. After Cordero drove past them, they drove to his apartment, and forced Cesar Mercado Torres, who was sitting in Cordero's car, to open the door to Cordero's apartment. Defendant, Mejia, and Lopez each possessed a handgun. While inside, they instructed Torres, Wallington Mosquera, Eduardo Ramos, and Cordero to stand against a wall to be searched. After a struggle broke out between defendant and Cordero over defendant's gun, defendant instructed Mejia to shoot Cordero in the leg. Lopez subsequently shot

A-3805-23

Cordero four times in the leg, and defendant "administered a final shot to [Cordero's] head."

Prior to his October 1, 2018 trial, defendant was held in pretrial detention for almost four and a half years following his indictment for numerous offenses arising from Cordero's killing. While defendant was detained, Mejia pled guilty to conspiracy to commit murder and agreed to testify for the State as part of his plea agreement; the State filed a superseding indictment on November 28, 2016, after Mejia's guilty plea; defendant retained new trial counsel on June 16, 2017; defendant moved for speedy trial on April 19, 2018, but withdrew it after a trial date was scheduled; and the trial court decided various motions from February to June of 2018, regarding the admission of testimony and statements, including a Rule 104 hearing in which the trial court admitted Mejia's testimony to show defendant's motive for killing Cordero under Rules 403 and 404(b)(2).

At trial, the court considered the State's request to instruct the jury regarding lesser-included charges. The court questioned defendant, who unequivocally stated he did not want the jury to consider lesser-included charges. Trial counsel followed up by explaining that defendant is "either not guilty or guilty of the murder. I don't want to give the jury the opportunity to compromise in this case. I think this is an all or nothing case and I would object

A-3805-23

to any lesser-included offense."  The trial court denied the State's request.  Citing State v. Brent, 137 N.J. 107, 115 (1994), the court reasoned that "where the proof goes to the higher-inclusive offense and would not justify any other verdict, except the conviction of that offense or an acquittal, it would be improper to instruct the jury with respect to included offenses" because it "might well be an invitation to the jury to return a compromise or otherwise unwarranted verdict."

Prior to Mejia's testimony, the court gave a False-in-one, False-in-all jury instruction, stating:

> If you believe that any witness or party willfully or knowingly testified falsely to any material facts in the case with the intent to deceive you, you may give such weight to his or her testimony as you may deem it is entitled.  You may believe some of it or you may, in your discretion, disregard all of it.

Mejia explained that defendant was the "boss" of their drug enterprise and owned the apartment where they dealt drugs, which he had not stated at the Rule 104 hearing.  Mejia also noted that Lopez "would provide [them] with the drug[s] . . . . [Defendant] would receive it . . . and [Hidalgo-Bautista] and [Mejia] would sell [the drugs]."  On the day of the offense, Mejia had a .357 revolver provided by Lopez, while defendant had 9-millimeter gun and gave

Lopez a .38 revolver. After Cordero was killed, they retrieved drugs, chains, and other items that Cordero possessed.

More than two months after the jury's guilty verdict, defendant was sentenced to sixty years subject to the No Early Release Act's (NERA) eighty-five percent parole ineligibility requirement, N.J.S.A. 2C:43-7.2, for murder, and two concurrent terms to the sixty-year sentence as follows: an eight-year term for burglary, subject to NERA; and an eight-year term for unlawful possession, subject to the Graves Act, N.J.S.A. 2C:43-6.2. The court imposed two concurrent four-year terms for the criminal restraint convictions; however, they were to be served consecutive to the sixty-year sentence. Despite merging conspiracy, felony murder, possession of a weapon for an unlawful purpose, and both aggravated assault with a firearm convictions into the murder conviction, the court sentenced these offenses individually—eighteen years for conspiracy, sixty years for felony murder, eight years for the possession of a weapon for an unlawful purpose, and one year for each aggravated assault with a firearm.

II.

In defendant's PCR petition, he argued that his trial counsel was ineffective in: (1) failing "to provide [d]efendant with a full copy of discovery"; (2) failing "to request an evidentiary hearing pursuant to N.J.R.E. 612 regarding

witness . . . Mosquera, and failing to cross-examine him during trial"; (3) failing to "present the defenses, jury charges, and arguments addressed on [d]efendant's direct appeal"; (4) failing "to prepare and file a motion for severance"; and (5) failing "to argue effectively for the reasons set forth in [d]efendant's direct appeal." Defendant also alleged that: (1) "[t]he [c]ourt failed to notice the defense of lack of jurisdiction in the court at any time during the pendency of the proceeding, which caused instant wrongful conviction"; and (2) that defendant's sentence was disparate and should be vacated.

On March 9, 2023, Judge Deitch denied defendant's petition without an evidentiary hearing, reasoning in a thirty-eight-page written decision that defendant's arguments were either procedurally barred by Rule 3:22-4 or Rule 3:10-2(c) and failed on its merits in not setting forth a prima facie case of ineffective assistance of trial counsel. The judge also dismissed defendant's speedy trial claim, noting that although the first factor set forth in Barker v. Wingo, 407 U.S. 514, 530 (1972), weighed in favor of defendant, the other three factors favored the State.

On April 10, the self-represented defendant moved for reconsideration. Over four months later, defendant's PCR counsel filed a supplemental letter memorandum in support of the motion. On October 3, the judge entered an order

A-3805-23

and a five-page written opinion denying the motion. The judge noted that defendant's motion was untimely pursuant to Rule 1:7-4(b) because it was filed more than twenty days after the court's denied PCR. Notwithstanding that deficiency, the judge noted defendant's motion lacked merit because it did "not put forth any new evidence or sufficiently allege[] that the [judge] failed to consider any probative, competent evidence to warrant reconsideration," or establish that denial of relief rested on a "palpably incorrect or irrational basis."

Defendant's appeal followed.

## III.

### A.

We review PCR judge's legal conclusions de novo. State v. Harris, 181 N.J. 391, 419 (2004). Under the two-pronged test to determine a trial counsel's ineffectiveness, the defendant must demonstrate that: (1) "counsel's performance was deficient," that is, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment;" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687, 694 (1984); accord State v. Fritz, 105 N.J. 42, 58 (1987).

A-3805-23

PCR "is neither a substitute for direct appeal, <u>R.</u> 3:22-3, nor an opportunity to relitigate cases already decided on the merits," <u>R.</u> 3:22-5; <u>State v. Preciose</u>, 129 N.J. 451, 459 (1992) (citations omitted). Under <u>Rule</u> 3:22-4(a)(1) to (3), any issue that was not raised on direct appeal cannot be a basis for PCR unless it could not have reasonably been raised on direct appeal, denying relief would result in fundamental injustice, or would violate the Constitution of the United States or the State of New Jersey.

B.

Defendant's arguments in Points I and III—that his trial counsel was ineffective in rejecting applicable lesser-included offenses and in failing to object to Mejia's testimony—are barred by <u>Rule</u> 3:22-5 because as Judge Deitch ruled, they were already litigated and rejected on direct appeal. <u>See</u> <u>State v. Hidalgo-Bautista</u>, No. A-2966-18 (App. Div. June 30, 2021) (slip op. at 22-23, 32-33). Moreover, as the judge ruled, the record reveals they are without merit. Defendant objected to the State's request to instruct the jury on the lesser-included offense of manslaughter. Trial counsel explained to the court that excluding the instruction was a part of an "all or nothing" strategy; either defendant committed the murder or not, and a lesser included offense instruction could encourage the jury to compromise and convict defendant of manslaughter.

11

Additionally, there was no reasonable basis for trail counsel to object to Mejia's testimony that defendant was the "boss" of the drug enterprise because the testimony did not exceed the scope of the trial court's Rule 104 ruling admitting Mejia's testimony to show defendant's motive for killing Cordero under N.J.R.E. 404(b)(2).  We affirmed the ruling's challenge on direct appeal.  Ibid.

C.

Defendant argues in Point II that trial counsel was ineffective in failing to request a false-in-one-false-in-all jury instruction.  This assertion is contradicted by the record.

Providing the exact language from the model jury instructions, the trial court charged the jury:

> If you believe that any witness or party willfully or knowingly testified falsely to any material facts in the case with the intent to deceive you, you may give such weight to his or her testimony as you may deem it is entitled.  You may believe some of it or you may, in your discretion, disregard all of it.

Defendant's argument is therefore without merit.

D.

Defendant argues in Point IV that trial counsel was ineffective for failing to dismiss the indictment on speedy trial grounds.  The right to a speedy trial is guaranteed by the Sixth Amendment and applied to the states through the Due

12

A-3805-23

Process Clause of the Fourteenth Amendment.  Klopfer v. North Carolina, 386 U.S. 213, 222-23 (1967); State v. Cahill, 213 N.J. 253, 264 (2013).  The right to a speedy trial attaches at the time of the defendant's arrest.  State v. Tsetsekas, 411 N.J. Super. 1, 8 (App. Div. 2009).  A violation of a defendant's speedy trial rights typically requires dismissal of the indictment against the defendant or vacatur of the sentence.  Strunk v. United States, 412 U.S. 434, 438 (1973).

In determining whether a defendant's Sixth Amendment right to a speedy trial has been violated, courts weigh the following factors:  (1) the "length of the delay"; (2) "the reason for the delay"; (3) "the defendant's assertion of his right"; and (4) "prejudice to the defendant."  Barker, 407 U.S. at 530; accord State v. Gallegan, 117 N.J. 345, 355 (1989).  "No single factor is a necessary or sufficient condition" to establish a violation of the right to a speedy trial and "the factors are interrelated, and each must be considered in light of the relevant circumstances of each particular case."  Tsetsekas, 411 N.J. Super. at 10; see Cahill, 213 N.J. at 270 (rejecting a "rigid bright-line try-or-dismiss rule" and applying a "case-by-case analysis" to speedy trial claims).  When determining whether to dismiss an indictment on speedy trial grounds, a court must balance "'the societal right to have the accused tried and punished'" with the defendant's right "'to be prosecuted fairly and not oppressively.'"  State v. Dunns, 266 N.J.

Super. 349, 380 (App. Div. 1993) (quoting State v. Farmer, 48 N.J. 145, 175 (1966)).

Although the first Barker factor weighs in favor of defendant, because he was jailed for approximately four-and-a-half years from his arrest until trial, the remaining three factors weigh in favor of the State. The second factor weighs in favor of the State because the delay was due to "motion practice, the schedules of multiple counsel in this three-defendant case, and [defendant]'s change of counsel [in 2017]," all of which were "neutral reason[s]" and were not "[a] deliberate attempt [by the State] to delay the trial in order to hamper the defense." Barker, 407 U.S. at 531. As for the third factor, the PCR court properly noted that "defendant's failure to assert the right to a speedy trial in the face of delay by the State," by filing and withdrawing his speedy trial motion, was a factor weighing in favor of the State. See Barker, 407 U.S. at 532. Finally, because defendant fails to allege how the delay prejudiced him and the length of the delay was reasonable given the complicated nature of the offense, the fourth factor weighs in favor of the State. See Cahill, 213 N.J. at 265 (acknowledging that "longer delays can be tolerated for serious offenses or complex prosecutions"). As a result, the PCR court properly denied defendant's IAC claim regarding speedy trial.

A-3805-23

E.

Defendant argues in Point V that his sentence was disparate to Mejia. This assertion is barred under Rule 3:22-4 because he should have raised this issue on direct appeal and imposing the procedural bar would not result in a fundamental injustice or be contrary to constitutional law.

Notwithstanding Rule 3:22-4's bar, defendant's disparate sentencing argument lacks merit. The purpose of the sentencing guidelines is "to promote fairness and public confidence" in our legal system. State v. Roach, 146 N.J. 208, 232 (1996). To that end, the essential question is whether the disparity is "justifiable or unjustifiable." Id. at 233. Furthermore, although sentencing disparities "may invalidate an otherwise sound and lawful sentence[,] . . . '[a] sentence of one defendant not otherwise excessive is not erroneous merely because a co-defendant's sentence is lighter.'" Id. at 232 (1996) (alteration in original) (quoting State v. Hicks, 54 N.J. 390, 391 (1969)). In assessing sentencing disparities, the trial court must determine "whether the co-defendant is identical or substantially similar to the defendant regarding all relevant sentencing criteria[,] . . . the basis of the [defendants'] sentences," and "the length, terms, and conditions of the sentences imposed on the" defendants. Id. at 233.

A-3805-23

Based on the trial testimony, the court determined that defendant, in contrast to Mejia, played a significant role in planning the crime, "supplied the weapons that were used in this killing," was "the boss of the other defendants," and administered the final shot that killed Cordero. Since Mejia and defendant's roles in the killing were not "identical or substantially similar" and they were not "equally culpable perpetrators," the different sentences were not unfair. Id. at 232 (internal quotation omitted).

F.

In his self-represented supplemental brief, defendant argues that his sentence is illegal under Erlinger because the jury, not the trial court, should have determined whether he qualified as a "persistent offender." See Erlinger, 602 U.S. at 834-35. We reject that argument because Erlinger does not apply retroactively to a collateral challenge, State v. Carlton, 480 N.J. Super. 311, 326-27 (App. Div. 2024),[3] and defendant's appeal was not in the direct appeals pipeline, and he did not receive an enhanced sentence under the statutory guidelines for murder.

---

[3] Our Supreme Court granted certification but has not ruled as of the date of this decision. State v. Carlton, 260 N.J. 478 (2025).

G.

In conclusion, we have considered the facts in the light most favorable to defendant and concluded that he has not set forth a prima facie case in support of the requested relief. Preciose, 129 N.J. at 462-63. Accordingly, an evidentiary hearing is not warranted. Id. at 462.

To the extent we have not specifically addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3805-23